Good morning. May it please the Court, I'm Robert Jobe, and I'm appearing today on behalf of the petitioner, Jagdeep Manan. For a slew of reasons, this case cries out, at a minimum, for remand. Tell us what they are. Well, first, contrary to the law of the circuit, Mr. Manan was never questioned about several of the credibility issues that the immigration judge cited in his decision. Like medical treatment? Like medical treatment. And in particular, the three credibility issues that the Board specifically embraced, he was never even asked about, never had an opportunity to explain any of them. On the issue of corroboration, similarly, the law of this circuit is that if the immigration judge perceives a deficiency in corroborating evidence, he has an obligation to give the to bring that to the attention of the applicant and give him an opportunity to respond. He never raised these corroboration issues that he cited in his decision with the petitioner, never offered him an opportunity to respond. Now, in this circuit, when an immigrant went in and ---- Explain that to me, would you? Yes, Your Honor. I mean, I understand what you just said, very clear. What do you mean he didn't give him an opportunity to respond? Well, what the immigration judge did here is he, at the close of the hearing, he basically said, well, I don't ---- I have issues with your credibility and I think you should have corroborated your case. But he never indicated what corroborating evidence ---- Just stop right there. Now, are you trying to say that there's some sort of duty implied here that the I.J., having made this preliminary whatever credibility, finally say, so now I'm going to stop the proceedings and allow you to rehabilitate yourself? Yes, there is. And what's the authority for that? The leading case on that, I would guess, is Paramasami v. Ashcroft. It's 295 F. 3rd, 1047. It's at page 1054. Is that in the brief? In the brief, I think we cite sidhu, and sidhu I think basically says the same thing. And what's the holding in those cases that would be directly applicable in this case on facts? The holding is, before the lack of corroboration can be used against an applicant's credibility, the applicant must be questioned about the, quote, perceived deficiency and be given an opportunity to respond. In this case, who is doing the questioning? Well, it's the immigration judge's role. It's his obligation to ensure that that happens, because it's the immigration judge who ultimately faulted, in this case, Mr. Madan, for the failure to present that corroborating evidence. Are we going to be writing an extension of our current law in this case? Because it Not at all. Not at all. See, I actually think that what I'm asking for is a narrowing of this Court's holdings. Because ordinarily, in a case like this where the immigration judge doesn't give an alien an opportunity to respond on these credibility questions, the law of this circuit is that those things can't be used against that person at all. Now, what I ask is, you realize and we all realize that credibility has become a centerpiece in these cases. Of course. And what I'm struggling with is, as you go through the process and the witness is live and hot in your questioning, do we think about writing that the judge should, at the moment the credibility issue arises, to say, okay, now we're getting into the credibility area. You just said blank, blank. I don't think that makes you very credible. Do they respond then? You're saying that when the end comes and the judge decides now we have a credibility, that we ought to start the hearing again in some other process. No, not at all. It's just that during the course of the proceeding, if there are these issues that trouble the immigration judge, that raise issues about the alien's credibility, the judge has an obligation to give the alien an opportunity to respond to those various issues. What's the function of the alien's lawyer? Pardon me, Your Honor? What's the function of the alien's lawyer in this credibility dialogue that we're engaging in? Well, I agree that that would be an issue where there's a huge issue about, you know, a huge credibility issue that no one's going to overlook. But if it's not, if it's more subtle than that, if it's something that the immigration judge is thinking but the lawyer may not, then the immigration judge has an obligation to raise it. So on that point, I would direct you to Second Circuit law, which makes exactly that distinction. In our circuit, what I'm saying, I think remand is appropriate in this case. Generally, the law in this circuit is that if the immigration judge doesn't afford the petitioner an opportunity to respond, those issues, those credibility questions can't be used at all against him. I think a more sensible approach, at least in this case, is to send the case back to give the alien the opportunity to respond rather than simply say, well, you didn't give him an opportunity to respond on these five things, so we're going to ignore those five things. It makes more sense in the context of this case to send the case back to the judge so that he can be afforded that opportunity to respond. Let's say we get by the credibility issue. We give you your issue for argument purpose. What do we do with the references? And there's numerous, and I'm not going to go through this record. Exactly. I marked them all. Relative to the fact that he was picked up in 89 and 99 in those times, either at the house, by the police, or when he was in jail. And there was references to the fact he volunteered that the reason that they beat you is so they get money out of you. Right. Now, this money thing comes all the way through, money to get release after you've been in jail, money when they come to the house and harass him. It seems to me that he admits flat out that the reason why the police were after him is to get money, and they beat him so that they get the money out of him. Now, what do we do with this? Very powerful testimony, and he made the testimony. There's no ambiguity in that testimony. Right. A couple points. I mean, first, obviously, he's not required to demonstrate that his political opinion is the only reason that he's facing abuse. He may not be, but he flat out volunteered unquestioning, and it's a pretty powerful testimony. In two instances, he did that. With regard to the ---- Now, is there some other basis other than political opinion? He's relying on political opinion, is he not? Not that's been raised thus far in the proceedings. The issues are political opinion. Okay. That's the issue in this case, yes. But he has to establish that he was persecuted because of his political opinion, not because they were trying to extort money from him. Exactly. It could be both, however. I mean, under Terubic, this Court's precedent in Terubic, the mere fact that the ---- and Borja as well. I mean, the mere fact that the police may have been interested in extorting money, that doesn't preclude a finding that they were also motivated by his political opinion. I agree with you. I agree with that. And that's what makes these cases so tough, because they start getting fact-specific. This case kind of startled me because of the way he brought this out. A lot of the cases, and I'd have to go back and check word for word with a prior authority to what he said word for word. But this case startled me because of the way he brought it up. In other words, the reason that he ---- first of all, he said he was mercilessly beaten by canes, rifled butts and straps, as I remember. And then he said, and the reason they beat you is so that they can get the money out, because they know if they don't beat you, you're not going to pay. Exactly. I mean, that's a little ---- that seems to me ---- excuse me ---- that seems to me, and you tell me why not, go a little bit beyond some of the authority we've already written on. But again, it just begs the question as to why this particular has been ---- this particular guy has been targeted for that sort of extortion. And the answer to that is what's dispositive of this case. And the answer to that is that he's been targeted for this extortion and these beatings because of his association with this man, Amarjeet Singh, and these suspected militants. And the IJ says that's implausible because these groups don't associate with each other. Your answer to that is? There's no evidence to suggest that that's true in this record. I don't have the country reports that seem to suggest that. I don't know of any particular passage in the country reports that would suggest that. But that particular finding of the immigration judge, it seems to me, rests on an error, a misapprehension of fact. And this is another reason I think remand is appropriate. The immigration judge essentially said that there's no reason to believe that the police would suspect this guy of being involved in Khalistan. But that rests on his belief that he really had no connection to Sikhism. And on that particular point, the immigration judge, again, he's just wrong. He's ignoring the evidence. Page 92 and page 544 of the record, Mr. Madan says he was, quote, very much influenced by the Sikh religion. He considers it to be a reformed version of Hinduism. He goes on in his declaration to say that he attended the Hindu temple and the Sikh gurdwara both on a regular basis. That's a quote, on a regular basis. Even here in the United States, he says he's attended the Sikh gurdwara, quote, many times. That's at page 149. His parents, he says, not only raised him to respect all religious creeds, they proudly displayed pictures of Sikh religious prophets in his home. That's at page 149. On pages 146, 147, and 545, he says that he traveled an eight-hour, took an eight-hour trip to Punjab to celebrate the 300th anniversary. I guess the I.J. is saying I don't believe any of that. That's like trying to convince me that Republicans and Democrats in Washington break bread together. What about the omissions? He focuses on three omissions between the declaration and the testimony and says these are suspicious because he begins to sound like the story is being made up. Yeah, I don't think he had an opportunity to explain any of those. I mean, the various omissions, for example, the declaration says that following 1984, the Delhi police harassed the family. No one ever asked him about that. I mean, the basic problem here is that the immigration judge waited until he rendered his decision to raise these various issues for the most part. There are exceptions to that, and that's contrary to the law of the circuit. What about the bottle attack? The declaration had nothing to do with it. The bottle attack has nothing to do with this case. I mean, we agree that's not unaccountable. That's probably true because he doesn't know who the assailant was. I'll reserve the balance of my time. You may do so, counsel. We'll hear from the government. May it please the Court. My name is Dimitri Rocha, and I represent the United States. This is a case about a well-traveled and educated Hindu who entered the United States on a visa, which included also a jumbo passport, which also included six other visas to countries such as Japan, Germany, and Switzerland. Mr. Maden received a full consideration of all of his claims before the lower courts. He received an initial assessment before his asylum officer. He received a de novo hearing before an immigration judge, and he appealed that and received a hearing before the Board of Immigration Appeals. What I hear your opponent saying pretty much is that the hearing wasn't fair because a lot of this stuff came out, and he wasn't given an opportunity to explain it, that all of a sudden it appeared out of nowhere in the IJ's description of the case, and according to law, he should have been given an opportunity and asked about these things in the hearing itself. Well, it appears. I mean, the hearings, I think the trial transcript is something along the lines of 150 pages, and he had a couple hearings before then. There was plenty of opportunity for the alien to explain the situation and to try to back up his claims. But I hear the other side saying the IJ didn't give him an opportunity. It didn't ask him about this stuff and that he was required to do so. Well, to the extent that he's trying to raise a due process claim, that's not before this Court that wasn't raised in the Petitioner's opening brief. But the — No, he's raising a credibility claim, and he's using a lot of our cases that talk about opportunities to explain. Right. Well, I would submit to the Court that he had an opportunity to explain. He had questioning before by the immigration judge, by government attorney, and most importantly by the alien's attorney about all these issues to flesh out any sort of questions that the IJ was talking about and raising in the hearing. Well, what Judge Trott is trying to talk about and what I was questioning counsel about, we have to deal with our law and credibility. And counsel seems to be arguing that we're either on target with his argument, i.e., if the immigration judge is going to make a credibility finding, he has to allow the alien a response. And in this case, it turns out at the end of all the proceedings, after 150 pages of transcripts, whatever, he makes the announcement there's a credibility issue, that he now has to affirmatively somehow allow a response, a rebuttal, if you will. And he's basing it on the fact that this is what our law requires. So we're not talking about what happened in counsel. And he's distinguishing also, as I understood his argument, between the ability of the counsel for the alien to do it during the hearing or the IJ in doing the hearing. So is it your opinion that our law doesn't require that? In other words, that our law would not require the judge to do this and allow this response when he decides to make a credibility determination? I don't – I'll be honest. I'm not entirely sure, but I don't think there's an affirmative duty for the – Do you have any authority one way or the other? He's cited us authorities to support – He cites SIDU. Do you – are you familiar with the SIDU case? I'm – SIDHU, I believe. No, I'm not familiar with that case. Well, that's his authority. That's what we have to deal with. Even if the standard of review is that his testimony and all of that record evidence has to compel a contrary conclusion before this Court that – compel that Mr. Maiden was, in fact, credible. Well, let's – let me make just a global statement, and then you can react to it. It seems to me that, as I told counsel, that we've now centered on this credibility issue and these immigration hearings. And it's a lynchpin, because in all the cases where there's credibility, determination by the IJ, if there's some circuit law, which we have a lot of it, that causes a certain procedure to be had and you mess it up, the credibility finding goes out the window and the case turns over. That's what counsel is arguing. You're just saying there's no credibility issue under our law that we have to worry about. Correct? Correct. There are numerous instances throughout the record that show that there's – Well, let's follow that further, then. I'm going to ponder that a minute. Let's assume that we get – and you lose on the credibility issue. Then you will lose the case, right? No, that's not correct, because even if assuming Petitioner was credible, he would still have to show that the persecution was on account on one of the five statutorily protected grounds. What's your best case for that argument? I think our best case for that argument is actually the case that Petitioner cites, which is Singh v. Ilkert. Singh v. Ilkert is highly distinguishable from our case before us. In that case, there was record evidence submitted – excuse me – that the alien country conditions showed that Indians in that country were arrested and detained and beaten in order to – under the – for political reasons, even though there may be other reasons, such as allegedly trying to take care and put down a militancy. However, the country report – that was eight years before Mr. Maiden's alleged incidents started beginning the main incidents in the late 90s. And the record evidence in our case shows that India is a different country dealing with Sikh militants or people who may be considered to be associated with Sikhs. The court in Singh v. Ilkert went – He's not a militant. He's a regular police. Correct. The police trying to rein in militants. Oh, I see. The other thing is, the court in Singh v. Ilkert emphasized the TADA Act, which, in fact, was – it appeared, according to the opinion, was the primary statute that many Indian police were using. It was an anti-terrorism statute to go after these people under – even though using the anti-militant, anti-terrorism as a guise for political attacks. However, that statute has actually lapsed. And that's in the record. It's Administrative Record 292. So that record – that statute, which was very important in the Singh v. Ilkert case, no longer exists in India. In fact, there are also a few other record sites. And in the record, there's a record on Administrative Record 420. The record states that police will sometimes, quote, unquote, use politics to arrest people for other reasons. In fact, politics is not the reason why they are arresting certain people. They'll use it to get money or other issues. You know about our circuit law relative to the interaction of those two issues. Correct. But what – in fact, what the record says there in that record report states that politics is not the reason why they arrested this person. It was sort of a guise in order to arrest people to make money or other – That's where we are in this case. The dialogue that I had referenced all these incidents where the police came to his house, Madden's house, where he was arrested. He was beaten with rifle butt sticks and whatever. And his answer was that the police know that in order to get money out of you, they have to beat you. And so now we're up against our law. And it sounds like we're in a fact-specific situation with our law, which distinguishes even though you were beaten, if there's a political issue or they picked you up for a political ground, then you still get relief. So how do we separate our case from those cases? Well, I think we have to go to your line of questioning. There are numerous instances in the record where he states that they simply arrested me to make money, in order to extort money. There's 138, 155, 173, 240, all those record citations where he stated that they simply would arrest him in order to make money off of him. Well, that's a nice paraphrase. I don't think he said exactly that. 138? 138, 155, 173, 240. And, in fact, some of the most interesting citations are actually the 142 to 143. Because 138 doesn't say exactly what you said. Okay. I think 142. I'm just paraphrasing where he cited money. Paraphrasing, unfortunately, doesn't work, because these have to be pretty specific. That's our problem. These are all fact-specific. And he does indicate that they beat him, again paraphrasing, so he can get money. But I don't think he says they picked me up and beat me so they can get money. That's not an accurate paraphrase, I don't think. Okay. No, you're correct. I'm not arguing. I'm just saying I don't think so. You're correct, though. He did say that they beat him in order to make money. Well, how do we interpret all of it? He volunteered this stuff, from what I can tell. I mean, this wasn't something that somebody was feeding in from some other direction. How do we interpret that? I think that's very important. I think it lends a lot of credibility to what he's saying in that situation, that he himself raised the issue that money was the reason. I want to point out, I'm sorry, one quick other citation on 142 and 143 where, in fact, he wasn't even at home and they simply took the money. And there was no beating. They just took a bribery from his family. And also on 143, there was he mentioned that the police would not go to his workplace because it was, I'm paraphrasing, too far away for them to go arrest him there. And that does not seem like the type of situation where you would have a political motive for arresting and beating him. Maddie seems to say that the reason he came to the house and wouldn't go to the office, whatever, they were still questioning him along the same lines that he's relying on, that underlying political reason. In other words, police are coming to the house because they continue to harass him because of his political, so-called political affiliation or knowledge. How do we handle that relative to the payment when he comes to the house? Now, there's no doubt they got the payment when they came to the house, but they came to question him. Correct. Well, I think that shows that they came simply for the money and not for any other reason. Thank you, counsel. Thank you. Your time has expired. Thank you. Mr. Jobe, you have a few seconds left. On this important question that Judge Brunetti is raising, I would direct the Court to page 169 of the administrative record. And I think this is the third arrest that Mr. Maddan was undergoing. And as he was being beaten, he – What line is that on, please? Your Honor, it starts at line 10. They're beating me with a stick, and I says, I told them that, well, if you want money, you take money, but my health condition's not good. But they did not. They said, oh, you will tell your answers and also confess. It's obvious from that that not only were they interested in money, they wanted him to confess. Here's the problem I have with your case. You've seen this. On page 5 of the administrative record, the BIA says, even if the respondent's testimony were credible – you've probably read this as many times as I have – we find that he's not met his burden in establishing that they persecuted him on a protected ground. And then they talk about the legitimate reason to look for Amarajit Singh. Right. And there's no question about that. They say they had a legitimate basis, meaning the police were questioning the respondent. And then here's the key. As the respondent admitted during his testimony, the police detained him for information, you know, about Amarajit Singh, I guess. But they beat him not on account of any protected ground, imputed or actual, but on account of their greed and desire to extort money from the respondent and his parents. And then they actually cite the Borja case that Judge O'Scanlan and I were both on and saying. So they're saying, sure, they had a legitimate ground to pick this guy up, but they separate the beating from any political motive by saying the only reason they were doing that was to get money. Right. That particular passage that you're referring to, though, Your Honor, I interpret that as referring only to the second arrest. And I would distinguish between. Well, for the foregoing reasons, they're talking about why he hasn't met his ground. They're simply after money. Right. But if you read that passage in its entirety, they begin by talking about, you know, the 1998 arrest and the 2001 arrest, and then they talk about the 1999 arrest. And it's in the context of discussing that 1999 arrest that they make that statement. And if you look at the passages that they cite to, transcript at 83, 85, 86, that's all second arrest. That particular finding there is all about the second arrest. And the focus of our case is the first arrest and the third arrest, because it's in those two arrests that the police were specifically interested in, his association with Amarjeet Singh, who they suspected to be involved in. Yeah, and that's the point that they make here, is they had a legitimate reason to question him about that. I would beg to differ on that, because there's absolutely nothing in this record, nothing at all, to suggest that Mr. Madan, that the police had any specific interest in him in terms of criminal proceedings or Amarjeet Singh. I mean, this is very much unlike DINU, you know, that we were talking about earlier this week, because in DINU, there the police had a very clear, specific law enforcement objective. That man was accused of shooting at unarmed civilians. Here, there's nothing like that. There's absolutely nothing except his alleged association with suspected separatists. That's the reason they were looking for him. Counsel, your time has expired. Thank you. The case just argued will be submitted for decision.
judges: Brunetti, O'scannlain, Trott